Cooke, J.
The issue in this action is whether a seller of goods performed in accordance with its agreement, by loading the goods into a container supplied by the buyer and by notifying the buyer of such loading, so as to shift thereby the risk of loss of the goods to the buyer. We answer this question in the negative and thereby affirm the holding of the Appellate Division.
*15 In June of 1973, the buyer, All America Export-Import Corp., placed an order with the seller, A. M. Knitwear Corp., for several thousand pounds of yarn. The buyer used its own purchase order form, dated June 4, 1973, and typed thereon a description of the goods, a statement that partial shipments would be accepted, a description of how to mark the cartons, the quantity in pounds, and the dollar amount of the order. In addition, at the place on the buyer’s form where the words "Ship Via” are printed, the buyer typed the instructions: "Pick Up from your Plant to Moore-McCormak Pier [sic] for shipment to Santos, Brazil.” Further, in the price column on the form, the buyer typed: "FOB PLANT PER LB. $1.35” (underlining in original). However, left blank by the buyer was the place on the form where the letters F.O.B. are printed and space is provided for the entry of F.O.B terms.
In support of its contention that it had fully performed when the goods were loaded in the container, the seller quotes from an examination before trial of the buyer’s vice-president, who stated:
"Q. What about the second order?
"A. After the first order was completed, Mr. Lubliner said he has more on hand.
"I said 'What do you mean by hand? Do you have again at the pier?’
"He says 'No. I have the same type of merchandise in my warehouse.’ He says T could make you a similar offer, the same amount of cartons, 352 cartons. I do not know the weight. The weight may vary, at the same price.’
"I said, 'Okay,’ We bought it. I accepted it.
"He asked me, what should I do.
"I said, 'As you know, most of the goods being shipped to South America is being containerized. I have to order a container or a trailer, whatever is the simplest expression. And then in turn you will have to put it into the container.’
"Mr. Lubliner, said, 'This is no problem. Just send down the container. I will try to help you.’ ”
In preparation for shipping the goods to South America, the buyer phoned International Shipper’s Co. of New York, a customs house broker and freight forwarder, and a third-party defendant in this action, to arrange for a local truckman to pick up and deliver the goods to the pier. International Shippers engaged a local truckman, Ability Carriers, Inc., *16 another third-party defendant in this action, which as part of its services picked up an empty container from the MooreMcCormack Lines.
On Friday, June 22, 1973, the local truckman deposited the empty container adjacent to premises located at 57 Thames Street, Brooklyn, New York. There is some dispute between the parties involving, in part, whether these were the seller’s premises since Bogart Knitwear, Inc. (apparently related to the seller corporation), another third-party defendant, occupies these premises, but it need not.be discussed, since it is not material to our analysis. It is sufficient to say that the container was delivered to the seller for loading.
On Monday, June 25, 1973, the seller had the goods loaded in the container and, on the same day, notified the buyer that the loading had been completed. The buyer then advised its freight forwarder to have the local truckman pick up the loaded container and deliver it to the Moore-McCormack pier. At around 8:00 p.m. that evening, prior to the arrival of the local truckman engaged by the buyer’s freight forwarder, an individual driving a tractor arrived at the Thames Street premises where the container was located and hooked up the trailer containing the • loaded container to his tractor. The tractor driven by this individual had no descriptive markings thereon or anything to identify its owner. Before leaving the premises, the driver signed a bill of lading, but the signature was indecipherable. It appears that this individual was a thief and had stolen the goods.
Sometime after June 25, the buyer delivered to the seller a check dated July 2, 1973 in the sum of $24,119.10 in payment for the goods loaded in the container. Payment on the check was thereafter stopped by the buyer, apparently when it was learned that the goods had not been received, and the seller brought an action against the buyer to recover payment for the goods.
At Special Term, both the seller and the buyer moved for summary judgment. That court found that the seller’s undertaking was to load the goods in a deliverable condition into the carrier’s container and that, by doing so and notifying the buyer, delivery was made in conformity with the agreement of the parties. Special Term thus determined that the risk of loss of the goods had passed to the buyer and granted the seller’s motion for summary judgment.
The Appellate Division reversed Special Term and granted *17 the buyer’s motion for summary judgment, on the basis that there was neither physical delivery to the carrier nor delivery within the meaning of the Uniform Commercial Code. Both courts relied on subdivision (2) of section 2-401 and section 2-509, but the Appellate Division also relied on the holding in Avisun Corp. v Mercer Motor Frgt. (37 AD2d 517). We affirm the order of the Appellate Division which granted the buyer’s motion for summary judgment.
Although the seller contends that the F.O.B. term on the buyer’s form did not have its ordinary meaning, the Uniform Commercial Code provides that, unless otherwise agreed, the term F.O.B. at a named place "even though used only in connection with the stated price, is a delivery term” (Uniform Commercial Code, § 2-319, subd [1]). Where the term F.O.B. the place of shipment is used, as in this case with the term F.O.B. plant, the code provides that the seller must ship the goods in the manner provided in section 2-504 of the Uniform Commercial Code and "bear the expense and risk of putting them into the possession of the carrier” (Uniform Commercial Code, § 2-319, subd [1], par [a]).
With respect to shipment by the seller, the code provides that where the seller is "required or authorized” to send the goods, but not required to deliver them to a particular destination, then "unless otherwise agreed” the seller must "put the goods into the possession of * * * a carrier” (Uniform Commercial Code, § 2-504, subd [a]). Further, with respect to the risk of loss, the code provides that where the contract requires or authorizes the seller to ship the goods by carrier "if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier” (Uniform Commercial Code, § 2-509, subd [1], par [a]; emphasis added). The risk of loss provision is, however, "subject to contrary agreement of the parties” (Uniform Commercial Code, § 2-509, subd [4]). Although the seller contends that section 2-509 is not applicable because the agreement between the parties does not "require” the seller to "ship the goods by carrier”, it should be noted that the section applies where the seller is "required or authorized” to ship the goods by carrier and is thus applicable here.
The effect of the provisions of the Uniform Commercial Code may be varied by agreement, with exceptions not applicable here (Uniform Commercial Code, § 1-102, subd [3]). Furthermore, the provisions relevant to this action provide that *18 the requirements set forth therein apply "unless otherwise agreed” or "subject to contrary agreement of the parties”, though the absence of these words in the specific provisions was not intended to imply that the effect of such provisions may not be varied by agreement (Uniform Commercial Code, .§ 1-102, subd [4]). In this respect, the Official Comment to one provision states that "[cjontrary agreement can also be found in the circumstances of the case, a trade usage or practice, or a course of dealing or performance” (Official Comment 5, McKinney’s Cons Laws of NY, Book 62½, Uniform Commercial Code, § 2-509; see, also, Uniform Commercial Code, § 1-205 ["Course of Dealing and Usage of Trade”]).
Despite the provisions of the code which place the risk of loss on the seller in the F.O.B. place of shipment contract until the goods are delivered to the carrier, here the seller contends that the parties "otherwise agreed” so that pursuant to its agreement, the risk of loss passed from the seller to the buyer at the time and place at which the seller completed physical delivery of the subject goods into the container supplied by the buyer for that purpose. In support of this contention, the seller alleges that the language of the purchase order "Pick Up from your Plant” is a specific delivery instruction and that the language "FOB PLANT PER LB. $1.35”, which appears in the price column, is a price term and not a delivery term. Further support for the seller’s contention is taken from the fact that the space provided in the buyer’s own purchase order form for an F.O.B. delivery instruction was left blank by the buyer. Thus, the seller contends its agreement with the buyer imposed no obligation on it to make delivery of the loaded container to the carrier.
As often happens in commercial transactions, the parties to this action did not prepare an extensive written agreement, but merely made an arrangement that, under normal circumstances, would have been entirely satisfactory. The intervention of a wrongdoer who stole the goods that were the subject of the agreement forces the court to determine who should bear the loss resulting from the theft. In this respect, although the seller argues that only to the extent that the agreement is silent should the code apply, it should be noted that the underlying purpose and policy of the code is "to simplify, clarify and modernize the law governing commercial transactions” (Uniform Commercial Code, § 1-102, subd [2], *19 par [a]). To this end, the code provides a framework for analyzing a variety of commercial transactions.
The seller’s contention, that the parties intended the F.O.B. term as a price term and not a delivery term, conflicts with the code provision that states that the F.O.B. term is a delivery term "even though used only in connection with the stated price” (Uniform Commercial Code, § 2-319, subd [1]; emphasis added). That the F.O.B. term was not inserted in the space provided for such an expression in the buyer’s own purchase order form does not require a determination that the F.O.B. term was intended as a price term, since the drafters of the code recognized that the term F.O.B will often be used in connection with the stated price. Thus, the place where the term F.O.B. was typed on the buyer’s form is not sufficient to suggest that the parties intended a price term, particularly when one considers that the relevant code provision was specifically intended to negate the decisions which treated this term as "merely a price term”- (Official Comment 1, McKinney’s Cons Laws of NY, Book 62½, Uniform Commercial Code, § 2-319).
Since the term "FOB PLANT” was a delivery term, the risk of loss was on the seller until the goods were put into the possession of the carrier—unless the parties "otherwise agreed” or there was a "contrary agreement” with respect to the risk of loss. In this respect, the holding in Avisun v Mercer Motor Frgt. (37 AD2d 517, supra), cited by the Appellate Division, is illustrative. There, the question was whether the defendant carrier was liable as bailee for goods that were loaded in its trailer but were stolen before it arrived to pick them up. The Appellate Division there determined that until the acceptance of the goods by the defendant carrier, there was no bailment and that making available a vehicle for (p 518) "possible temporary storeage” was not an "acceptance”. The seller contends that the Avisun case has no relevance to this case because it involves the issue as to when a bailment arises as a matter of law. The seller’s interpretation is, however, too limited. The Avisun case is relevant here because, in the same sense that loading the trailer was not an "acceptance” of a bailment by the carrier, the loading of the container by the seller is not "delivery” to the carrier for purposes of the code, unless the parties so agree.
With respect to the agreement of the parties, the seller contends that the statements in the affidavits of the parties *20 and a portion of an examination before trial of the buyer’s vice-president manifest that the parties intended that the seller’s performance would be complete when the goods were loaded into the container and the buyer was notified thereof. That this was the agreement of the parties is, according to the seller, further suggested by the fact the buyer issued a check, the payment of which was subsequently stopped, in payment for the goods.
The issuance of the check by the buyer gives little support to the seller’s view. The making of payment is as consistent with the buyer’s expectation that delivery had been made to the proper carrier as it is with the seller’s contention that payment was made because the buyer considered the seller’s performance to be completed upon loading the container.
With respect to the seller’s contention as to the meaning of the statements of the buyer’s vice-president, the seller has a formidable task in trying to prove that the parties did not intend the ordinary meaning of the term "FOB PLANT”, i.e., delivery to the carrier. Although the only written expression in the transaction was the buyer’s purchase order form on which the buyer typed the F.O.B. term, if the seller did not agree to this term, the seller should have expressed its disagreement after it received the purchase order form. For example, the seller should have indicated that the term "FOB PLANT” was merely a price term and not a delivery term (see, e.g., 5 McKinney’s Forms, Uniform Commercial Code, § 2-319, Form 1) or that the risk of loss was on the buyer after loading (cf. 5 McKinney’s Forms, Uniform Commercial Code, § 2-319, Form 2). The code anticipates that a written confirmation by a party may state terms additional to, or even different from, those offered and agreed upon, which terms, depending on certain factors, may become part of the contract (see Uniform Commercial Code, § 2-207). Yet here the seller did not seek to modify the F.O.B. term typed on the buyer’s purchase order, but apparently relied on its own understanding of the agreement.
The provisions of the code with respect to risk of loss are subject to the "contrary agreement” of the parties (Uniform Commercial Code, § 2-509, subd [4]). In this respect, the Official Comment states that " '[cjontrary’ is in no way used as a word of limitation and the buyer and seller are left free to readjust their rights and risks * * * in any manner agreeable to them” (Official Comment 5, McKinney’s Cons Laws of NY, *21 Book 62V2, Uniform Commercial Code, § 2-509). It is, however, a recognized principle that "if the parties have made a memorial of their bargain * * * the law does not recognize * * * their intent, unless it is expressed in, or may fairly be implied from, their writing” (4 Williston, Contracts [3d ed], § 600A, p 286). It has also been established that when words have a well-understood meaning the courts are not permitted to search for the intent of the parties (see Nau v Vulcan Rail & Constr. Co., 286 NY 188, 197). The term "FOB PLANT” is well understood to require delivery to the carrier and does not imply any other meaning. If a contrary meaning was intended, an express statement varying the ordinary meaning is required. The statements made by an officer of the buyer and the other circumstances of this case are not enough to show that the term did not mean what it does in ordinary commercial transactions. One of the principal purposes of the code is to simplify, clarify and modernize the law governing commercial transactions (Uniform Commercial Code, § 1-102, subd [2], par [a]). To allow a commonly used term such as F.O.B. to be varied in meaning, without an express statement of the parties of an intent to do so, would not serve that purpose.
Accordingly, the order of the Appellate Division which granted the buyer’s motion for summary judgment should be affirmed, with costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed.